UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSEPH MERENDINO,

                              Plaintiff,


              -vs-                                    03-CV-0525C(SR)

AMPCO SYSTEM PARKING,
APCOA/STANDARD PARKING,
NIAGARA FRONTIER TRANSPORTATION AUTHORITY,

                      Defendants.
_____

APPEARANCES:        JOSEPH MERENDINO, Cheektowaga, New York, Plaintiff
                    *Pro Se.*

                    BOUVIER & O'CONNOR (CHRIS G. TRAPP, ESQ., of
                    Counsel), Buffalo, New York, for Defendant AMPCO.

                    NIAGARA FRONTIER TRANSPORTATION AUTHORITY
                    LEGAL DEPARTMENT (SUSAN P. WHEATLEY, ESQ., of
                    Counsel), Buffalo, New York, for Defendant NFTA.


## INTRODUCTION

In this employment discrimination case, plaintiff alleges that defendants

discriminated against him on the basis of his gender and age, and paid him less wages

than comparable female co-workers, in violation of Title VII of the Civil Rights Act of 1964,

42 U.S.C. §2000e, *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.

§621, *et seq.*, and the Equal Pay Act, 29 U.S.C. §206, *et seq.*  Plaintiff also alleges that the

defendants have violated certain rights protected by the First Amendment to the

Constitution.  Defendant AMPCO System Parking ("AMPCO") and the Niagara Frontier

Transportation Authority ("NFTA") have moved pursuant to Fed. Riv. P. 12(b)(6) to

dismiss the constitutional claims (Items 35, 38).  Plaintiff has settled his claims against APCOA/Standard Parking (Item 41).

## BACKGROUND and FACTS

In his amended complaint filed May 12, 2004, plaintiff alleges that he was employed at the Buffalo Niagara International Airport parking facility from May 15, 2000 until his termination on July 11, 2002.  Item 26.[1]  He states that in January or February 2002, the facility manager for APCOA promised a $6,000 pay raise to plaintiff and another manager. In April 2002, the other manager, a woman, received the raise, and plaintiff did not.  *Id.,* ¶ 1.  In March 2002, the APCOA manager paid a fringe benefit to a female employee after plaintiff had been informed that such a benefit did not exist.  *Id.,* ¶ 2.  Plaintiff alleges that on April 2, 2002, APCOA sought to prejudice plaintiff's future employment by posting a derogatory memo.  *Id.,* ¶ 3.  Plaintiff alleges that in March 2002, the defendants "formulated a plan to begin to eliminate all of the older 'non-union' employees including the plaintiff."  *Id.,* ¶ 4.  Plaintiff states that he met with AMPCO in May 2002 to discuss issues of pay disparity.  Instead of affording him a remedy, AMPCO terminated plaintiff's employment.  *Id.* ¶ 5.  Plaintiff also alleges that in December 2002, AMPCO "went out of [its] way to make it easy for a former female employee to claim" unemployment benefits. *Id.,* ¶ 6.  Plaintiff alleges that these actions violate the Equal Pay Act, Title VII and the ADEA.

---

[1] Although not specifically alleged in the complaint, plaintiff was employed at the time of his termination by AMPCO, which manages the parking facilities at the Buffalo airport under a contract with the NFTA.  APCOA/Standard Parking had previously managed the parking facilities, and plaintiff had been employed by APCOA from May 15, 2000 until April 13, 2002.

Additionally, plaintiff alleges that the defendants jointly denied plaintiff certain rights guaranteed by the First Amendment to the United States Constitution.  Specifically, plaintiff alleges that the NFTA reserved the right to demand the removal of objectionable employees, thus preventing plaintiff and others "from speaking freely without fear of reprisal . . . ."  Item 26, ¶ 7(a).  Plaintiff also alleges that the NFTA infringed upon his right to negotiate wages on his own behalf "by restricting the amount of reimbursement to the other defendants . . . ."  *Id., ¶* 7(b).  Finally, plaintiff alleges that in August and September 2002 AMPCO, in retaliation for plaintiff's complaints of discrimination, "sought to prevent the plaintiff from using a public facility, i.e., Buffalo Niagara International Airport, by threatening to enlist the NFTA police authority to arrest the plaintiff if he was seen at the facility. . . . " *Id., ¶* 7(c).

Defendants AMPCO and the NFTA have filed answers to the amended complaint. On July 16, 2004, AMPCO filed this motion to dismiss, and the NFTA sought to join in the AMPCO motion (Item 38).  Plaintiff filed his response to the motion (Item 44), and  AMPCO filed a reply on September 17, 2004 (Items 46, 47).  The court deemed oral argument unnecessary.  For the reasons that follow, the motion is granted, and plaintiff's First Amendment claims are dismissed.

## DISCUSSION

When ruling on a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the court "must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002) (internal quotation marks and citation omitted).  The court

cannot dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Accordingly, this court must not consider whether the claims will ultimately be successful, but merely "assess the legal feasibility of the complaint." *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998).  Moreover, when reviewing a motion to dismiss, the court must limit its review to the face of the complaint and documents incorporated therein that are properly subject to judicial notice.  *See Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996).  Furthermore, because plaintiff is proceeding *pro se*, this court will read his "supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

As there is no independent right of action under the First Amendment, the court has liberally construed the complaint to allege the violation of 28 U.S.C. § 1983.  Section 1983 states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

42 U.S.C. §1983.  To state a claim under § 1983, plaintiff must allege state action or action taken under color of law, and the deprivation of a constitutional right.  "[S]tate action requires both an alleged constitutional deprivation caused by the exercise of some right or privilege created by the State . . . and that the party charged with the deprivation must be

a person who may fairly be said to be a state actor." *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50 (1999) (quotations and citations omitted).

Here, plaintiff argues that the NFTA, as a public benefit corporation, is a state actor for purposes of § 1983, and that the NFTA has so insinuated itself into the personnel matters of AMPCO that plaintiff was, in effect, jointly employed by both AMPCO and the NFTA.  In ¶ 7(a) of the complaint, plaintiff alleges that he was prevented from "speaking freely without fear of reprisal from the Government" because the NFTA retained control over AMPCO's personnel matters.  In ¶ 7(b), plaintiff alleges that as a result of the NFTA contract with AMPCO, the NFTA prevented plaintiff from negotiating, and thus limited, his salary.  Finally, in ¶ 7(c), plaintiff alleges that AMPCO, in retaliation for plaintiff's complaints of employment discrimination, prevented him from using the Buffalo airport.  Accepting, for purposes of this motion, the truth of plaintiff's allegations that the NFTA, and by extension AMPCO, are acting under color of law and that they prevented him from "speaking freely," negotiating his salary, and visiting the Buffalo airport, plaintiff has nonetheless failed to allege a First Amendment violation.

The First Amendment to the Constitution states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for redress of grievances."  U.S. Const., Amd. I.  The First Amendment generally prevents the government from proscribing speech or expressive conduct because of disapproval of the ideas expressed.  *See R.A.V. v. City of St. Paul, Minn.,* 505 U.S. 377, 382 (1992).  The First Amendment right to free speech encompasses a person's ability to express and communicate views, ideas, opinions, and information

5

without prior restraint or punishment. *X-Men Security, Inc. v. Pataki*, 196 F.3d 56, 68-69 (2d Cir. 1999). The right of association, derivative of the right of assembly, "guarantees individuals the right to join with like-minded individuals to accomplish a shared political objective that is protected by the First Amendment." *Green Party of New York v. New York State Bd. Of Elections,* 389 F.3d 411, 415 (2d Cir. 2004).

"It is elementary constitutional doctrine that the first amendment only restrains [government] action . . . ." *Buckley v. American Fed'n of Television & Radio Artists*, 496 F.2d 305, 309 (2d Cir. 1974) (citing *Railway Employees' Dep't v. Hanson*, 351 U.S. 225 (1956)); *see also Gorman-Bakos v. Cornell Co-op Extension of Schenectady County,* 252 F.3d 545, 551 (2d Cir. 2001) (the First Amendment applies only to state actors). While the First Amendment has been made applicable to the states through the Fourteenth Amendment, the First Amendment applies only to state actors and does not restrict private acts. *See Loce v. Time Warner Entertainment Advance/Newhouse Partnership*, 191 F.3d 256, 266 (2d Cir. 1999). Thus, an employee has no protection from the infringement of First Amendment rights by a private employer. *See N.L.R.B. v. Edward G. Budd Mfg. Co.,* 169 F.2d 571, 577 (6th Cir. 1948), *cert. denied,* 335 U.S. 908 (1949). Here, plaintiff has alleged that he was publicly employed by the NFTA and AMPCO jointly. A private actor acts under color of state law "when the private actor is a willful participant in joint activity with the State or its agents." *Ciambriello v. County of Nassau,* 292 F.3d 307, 324 (2d Cir. 2002) (quotation and citation omitted). While the court need not accept plaintiff's

6

Case 1:03-cv-00525-JTC   Document 49   Filed 09/30/05   Page 7 of 11

conclusory allegations that defendants acted under color of state law, the court accepts the truth of this allegation for purposes of the motion.[2]

Public employees do not forfeit their constitutional rights.  A public employer may not chill the First Amendment rights of its employees through fear of retaliation.  *See Locurto v. Giuliani,* 269 F. Supp.2d 368, 383 (S.D.N.Y. 2003).  Likewise, the government cannot condition public employment on the infringement of an employee's constitutionally protected interest in the freedom of expression.  *Connick v. Myers,* 461 U.S. 138, 142 (1983); *Keyishian v. Bd. of Regents*, 385 U.S. 589, 605-06 (1967).  However, not all expression is protected by the First Amendment in the context of public employment.  It is the duty of the court to strike a "balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  *Pickering v. Bd. Of Educ.*, 391 U.S. 563, 568 (1968).  "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment."  *Connick v. Myers*, 461 U.S. at 146.

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the

---

[2] Defendants dispute that plaintiff has sufficiently alleged action taken under color of state law, and the court's acceptance of this allegation for purposes of the motion does not indicate a view of the merits of plaintiff's argument.  As the court has determined that plaintiff has failed to demonstrate the violation of his First Amendment rights, the court need not address whether defendants' actions constituted action taken under color of state law.  *See Weiss v. Violet Realty,* 2004 WL 2534238, *2 n.9 (W.D.N.Y. November 5, 2004).

7

whole record." *Connick v. Myers,* 461 U.S. at 147-48.  While the determination of whether speech constitutes a matter of public concern "may be somewhat fact-intensive, it presents a question of law for the court to resolve." *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003).  Plaintiff must make some showing, other than the mere allegation, that the speech infringed upon addresses a matter of public concern and is thus protected.  *Scagliotti v. DeLuca,* 2000 WL 303433, *5 (D.Conn. February 16, 2000).

Here, plaintiff makes no allegation that the defendants infringed upon any speech of public importance or conditioned plaintiff's employment on the infringement of his First Amendment freedom of expression.  In his response to the motion, plaintiff has submitted a memorandum from AMPCO's General Manager to the Human Resources Director regarding plaintiff's interactions with other employees, and characterizes this memorandum as a "smoking gun."  Item 44, p. 14.  In the memorandum, AMPCO General Manager Frank Duda informed the Human Resources Director that employee complaints regarding plaintiff had reached the NFTA, and a representative of the NFTA requested that AMPCO management have plaintiff "tone it down."  Item 44, Exh. M.  There is nothing in the complaint or in plaintiff's response to the motion that indicates that plaintiff's objectionable speech involved anything other than personal interactions and disputes between plaintiff, AMPCO employees, and other airport personnel.  *See Knight v. City of New York,* 303 F. Supp.2d 485, 501 (S.D.N.Y. 2004) (complaints of harassment and discrimination were related solely to personal employment situation and are not protected speech); *Alexander v. City of New York,* 2004 WL 1907432, *14 (S.D.N.Y. August 25, 2004) (complaints about work assignments and conditions concern plaintiff's personal employment situation and do

8

not constitute protected speech).  Accordingly, plaintiff has failed to allege the chilling of any speech of public concern in ¶ 7(a) of the complaint, and thus has failed to allege either a constitutional violation or a violation of § 1983 with regard to his freedom of speech claim.

Similarly, plaintiff has failed to allege a constitutional violation with regard to his inability to negotiate his wages.  The infringement of plaintiff's right to negotiate a salary, as alleged in ¶ 7(b) of the complaint, reflects his dissatisfaction with his salary due to the contract between AMPCO and the NFTA.  To the extent that this claim can be construed to allege a violation of plaintiff's First Amendment freedom of speech, this is a purely personal dispute between plaintiff and his employer, unrelated to any issue of public concern, and does not constitute protected speech.  *See Connick v. Myers*, 461 U.S. at 147-48; *see also Saulpaugh v. Monroe Comm. Hosp.,* 4 F.3d 134, 143-44 (2d Cir. 1993), *cert. denied*, 510 U.S. 1164 (1994).

With respect to the allegations in ¶ 7(c) of the complaint, in which plaintiff states that in retaliation for his claims of discrimination, AMPCO threatened to have him removed from the airport, plaintiff has likewise failed to allege a First Amendment violation.  At the time of this alleged threat to his constitutional rights, plaintiff was no longer employed by AMPCO, and was present at the Buffalo airport, having driven his mother to the airport for a flight. Plaintiff states that he "had every right to interact with any employee" at the airport, and that he had not been able to say goodbye to his friends and provide contact information prior to his discharge.  Item 44, p. 17.  The court liberally construes this paragraph to allege a First Amendment claim of freedom of association.

9

Accepting the truth of plaintiff's allegation, that AMPCO threatened to have him removed from the Buffalo airport, plaintiff has failed to show that he was prevented from exercising his First Amendment rights to freedom of association.[3]  The First Amendment right to freedom of association protects a person's right to enter into "intimate human relationships" as well as associations for the purpose of exercising other First Amendment liberties including "speech, assembly, petition for the redress of grievances, and the exercise of religion."  *Roberts v. United States Jaycees,* 468 U.S. 609, 617-18 (1984). Here, plaintiff states that he visited the Buffalo airport for purely personal reasons– transporting his mother to the airport for a flight and visiting with former co-workers.  Casual social encounters are not the type of "intimate" relationships contemplated by the First Amendment.  *See Roberts,* 468 U.S. at 619-20 (close, personal affiliations, such as those that attend the creation and sustenance of a family, exemplify the freedom of association); *cf. City of Dallas v. Stanglin*, 490 U.S. 19, 24 (1989) ("It is clear beyond cavil that dance-hall patrons, who may number 1,000 on any given night, are not engaged in . . . 'intimate human relationships' . . . ."); *NYC C.L.A.S.H., Inc. v. City of New York,* 315 F. Supp. 2d 461, 472 (S.D.N.Y. 2004) ("the gathering of individuals in bars and restaurants to engage in social or even business activities while smoking" is not the type of "intimate" relationship that the Supreme Court contemplated in *Roberts*).  Nor has plaintiff alleged the chilling of any expressive associational conduct "in pursuit of . . . political, social, economic,

---

[3] Defendants dispute that plaintiff was prevented from using the Buffalo airport.  In letters to plaintiff dated August 19, and September 16, 2002, Mr. Duda advised plaintiff that he had been observed driving through the parking lots at the airport and had approached several employees who had complained about the disruption to their work.  Mr. Duda advised plaintiff that he had every right to use the parking facilities at the airport, but should not approach the employees and should restrict his visits to official business.  Item 37, Exh. B.

educational, religious, and cultural ends." *Roberts,* 468 U.S. at 622.[4]  Accordingly, plaintiff

has failed to allege a deprivation of First Amendment rights in ¶ 7 of the complaint against

either the NFTA  or AMPCO, and the First Amendment claim must be dismissed.

## CONCLUSION

The defendants' motion to dismiss plaintiff's First Amendment claims is granted.

Defendants shall address the remaining causes of action promptly.

So ordered.

_____
\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: September 30, 2005
p:\opinions\03-525.sept2605

---

[4]  Additionally, even if plaintiff's personal visits to the airport could be viewed as protected expressive conduct, the First Amendment does not guarantee access to property simply because it is owned or controlled by the government.  *U.S. Postal Serv. v. Council of Greenburgh Civic Assn.,* 453 U.S. 114, 129 (1981).  An airport is not a public forum for First Amendment purposes, and any government restriction on First Amendment expression at an airport need only meet a standard of reasonableness. *Int'l Soc. for Krishna Consciousness v. Lee,* 505 U.S. 672, 683 (1992).